c

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ELDON NAQUIN, *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:17-CV-01311 |
| VERSUS | JUDGE DRELL |
| FOREST RIVER, INC., *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

---

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), filed by Defendants Forest River, Inc. ("Forest River") and Camping World RV Sales, LLC ("Camping World") ("Defendants"). (Doc. 5). Plaintiffs Eldon Naquin and Elaine Naquin ("Plaintiffs") oppose the motion. (Doc. 9). Defendants' Motion to Dismiss (Doc. 5) should be GRANTED IN PART and DENIED IN PART. Specifically, because Defendants have shown a valid written limited warranty, Defendants' motion should be granted as to Plaintiffs' claims against Forest River for breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*. And because Defendants have not sufficiently shown the waivers of implied warranty or redhibition are valid under Louisiana law, Defendants' motion should be denied as to Plaintiffs' claims against Forest River and Camping World for breach of implied warranty under the MMWA and Louisiana redhibition laws.

## I.    Background

On October 13, 2017, Plaintiffs filed a Complaint against Defendants alleging violations of the MMWA, and for supplemental state claims for redhibition under

Louisiana Civil Code Articles 2520, *et seq.*, and negligent repair.[1]  (Doc. 1).  Plaintiffs seek monetary damages, rescission of the sales contract, interest, attorney's fees, and costs.  (Doc. 1).

The dispute arises from the Plaintiffs' purchase on March 25, 2016 of a new 2016 Forest River 360DS Georgetown XL Class A motor home ("motor home") from Camping World in Lafayette, Louisiana.  (Doc. 1).  Forest River manufactured and constructed the motor home, assembled the component parts, and sold the motor home to Camping World. (Doc. 5-1).  The sales price of the motor home was $159,785.00.  (Doc. 1).  Plaintiffs allege a sales contract was presented to them and executed at the dealership in Lafayette, Louisiana.  (Doc. 1).

Plaintiffs assert the defective conditions include, but are not limited to:

a.  power jack repaired for oil leaks;
b.  entire motor home floor required regrouting;
c.  scratches on countertop required buffing out; large slide out never worked right, always in a bind, and broke the smoke detector on ceiling;
d.  sewerage dump valves were later found broken and both sewer tanks had shifted causing plumbing to shift and break apart;

---

[1] Plaintiffs assert diversity jurisdiction. (Doc. 1).  Plaintiffs allege the amount in controversy exceeds $75,000.  (Doc. 1) (Plaintiffs assert the total cost of the motor home, including finance charges and expenses, will be $263,576.83, if the sale is rescinded.).  Plaintiffs are citizens of Louisiana.  (Doc. 1). Forest River is an Indiana corporation with its principle place of business in Indiana.  (Docs. 1, 5). Forest River is a citizen of Indiana.  Plaintiffs allege Camping World is a Minnesota limited liability company, with its principal business office in Illinois.  (Doc. 1).  Plaintiffs further allege Camping World's manager resides in Illinois, and that Camping World's owners are corporations organized and domiciled in states other than Louisiana.  (Doc. 1).  The Fifth Circuit has held that the citizenship of an LLC "is determined by the citizenship of all its members." Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079-80 (5th Cir. 2008). Plaintiffs' Complaint does not allege the citizenship of all of the members of Camping World.  Accordingly, diversity jurisdiction is not clear from the Complaint. However, while plaintiffs did not assert federal question jurisdiction under the MMWA, plaintiffs do assert breach of warranty claims under the MMWA.  (Doc. 1).  The MMWA grants federal courts jurisdiction to hear claims for breach of warranty so long as the amount in controversy is at least $50,000.  15 U.S.C. § 2310(d)(3).  Given that the sales price of the motor home was $159,785 and plaintiffs seek rescission of the sale, it appears that the allegations on the face of the Complaint satisfy the jurisdictional threshold under the MMWA.  Federal question jurisdiction is thus apparent on the face of the Complaint.

     e.     windshield automatic shade broke, the shade next to the driver broke, and the shade on top of sofa broke;

     f.     purchased with scuffed leather sofa and foot print at purchase that would not come off, red and blue ink on the captain's chair, Camping World said they would order a new sofa and chair and never did;

     g.     leak found on the top of the large slide out after warranty work;

     h.     plywood showing under the slide out; and

     i.     new entry door locks had to be requested.

(Doc. 1).

Plaintiffs also assert the following dealer repairs:

     a.     front bathroom vent cracked and lid broken and repaired, and replaced vent hood;

     b.     light hanging out of rear bathroom ceiling repaired and replaced;

     c.     passenger door out of adjustment, hitting top of frame;

     d.     double slide maintenance and adjustment on two rooms;

     e.     A/C service, generator service, refrigerator maintenance battery service;

     f.     water heater anode rod needs replacement; spot sealed all four roof corners;

     g.     high pressure hose on power steering leaking;

     h.     smoke detector broken off when closing slide and mounting tabs on back of detector cracked requiring replacement;

     i.     keys ordered to outside compartment;

     j.     cut out broken sewer Y and replumb the dump valves broken off at the Y in the water compartment;

     k.     entry door struts pulled out of ends and tripped the threads;

     l.     windshield shade is the wrong roll style and side shades are pushing against the windshield shade, and kit to fix shade brackets ordered and installed;

     m.     roller spring on shade behind driver seat broken and spring assembly replaced;

     n.     living room slide fascia had water damage at bottom;

     o.     wood under slide repainted;

     p.     living room slide on driver side goes out sideways;

     q.     grease on valance over couch;

     r.     fascia that was replaced is chipped; and

     s.     gasket came off window on side of couch caused by interior window frame being pulled apart.

(Doc. 1).

Plaintiffs aver an implied warranty of merchantability arose from the transaction, and from the repairs performed by Defendants. (Doc. 1). Plaintiffs also aver express warranties were made, including that any malfunction in the motor home occurring during a specified warranty period resulting from defects in material or workmanship would be repaired. (Doc. 1). Plaintiffs claim Defendants impliedly warranted the merchantability of the motor home, and impliedly warranted the repair work was done in a good and workmanlike manner. (Doc. 1).

Plaintiffs also claim Defendants expressly warranted the motor home from any malfunction from defects in material or workmanship, and that repair work had in fact repaired the defects. (Doc. 1). Plaintiffs allege Defendants extended the express warranty an additional two years due to the continued problems with the motor home. (Doc. 1). Plaintiffs allege Forest River offered an express warranty with the contract for purchase of the motor home. (Doc. 1). Plaintiffs claim the basic warranty covered any repairs or replacements during the warranty period due to defects in factory materials or workmanship. (Doc. 1). Plaintiffs allege these repairs were to be made at no charge.

Plaintiffs claim the motor home was defective in materials and workmanship upon delivery, such defects being discovered within the warranty periods. (Doc. 1). Plaintiffs assert they returned the motor home to Defendants for warranty repairs on numerous occasions. (Doc. 1). Plaintiffs claim Defendants failed to repair the motor home to bring it in conformity with its warranties. (Doc. 1). Plaintiffs claim Defendants were notified of the defective conditions on numerous occasions. (Doc. 1).

Plaintiffs further state the motor home is not usable or its use is so inconvenient that neither Plaintiffs nor a reasonably prudent buyer would have purchased the motor home had they know of the defects prior to the sale. (Doc. 1). Plaintiffs also claim they requested, without success, a rescission of the sales contract. (Doc. 1).

Defendants now move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 5). In support, Defendants attach Camping World's purchase contract (Doc. 5-2), and Forest River's Limited Warranty (Doc. 5-3).[2] With and subject to their Motion to Dismiss, Defendants filed an answer to the Complaint, asserting various affirmative defenses. (Doc. 5). Defendants argue Plaintiffs' MMWA and redhibition claims are prescribed on the face of the Complaint. (Doc. 5-1). Alternatively, Defendants argue Plaintiffs' MMWA claim should be dismissed because the alleged defects are not subject to any warranty. (Doc. 5-1).[3] Defendants further argue that Camping World disclaimed all warranties, and that Forrest River disclaimed the complained of issues from Forrest River's' limited warranty. (Doc. 5-1).

---

[2] The Court may consider a document attached to a motion to dismiss if it is referenced in plaintiff's complaint and central to his claim. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007); Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). Here, Plaintiffs allege they entered a purchase contract with Camping World, which included an extended warranty. (Doc. 1). Plaintiffs also allege an express warranty by Forest River. (Doc. 1). The purchase contract and express warranty are central to Plaintiffs' claims, and are referenced in the Complaint. (Doc. 1). Plaintiffs did not object to the introduction of the purchase contract and warranty. Therefore, the Court will consider those documents.

[3] Defendants do not address Plaintiffs' negligent repair claim.

Plaintiffs oppose the Motion to Dismiss. (Doc. 9). Plaintiffs argue Defendants' Rule 12(b)(6) motion is untimely since it was filed simultaneously with an answer.[4] (Doc. 9). In support of their opposition, Plaintiffs attach their affidavits, repair orders, and pictures of the motor home. (Doc. 9).

## II. Law and Analysis

### A. Standards governing the 12(b)(6) Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim is facially plausible when it contains sufficient factual

---

[4] Plaintiffs assert Defendants' motion is untimely, and that certain defenses under Rule 12 are waived. (Doc. 9). Plaintiffs assert the Court may treat the untimely motion to dismiss as a motion for judgment on the pleadings. (Doc. 9). Rule 12(b) provides that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." Fed. R. Civ. P. 12(b). In a typical case, a defendant would assert a Rule 12(b) defense by motion before filing a responsive pleading. See Fed. R. Civ. P. 12(b) ("A motion asserting [a 12(b)(6) defense] must be made before pleading if a responsive pleading is allowed."). "When a 12(b) motion to dismiss and an answer are filed simultaneously, however, courts generally view the motion as having preceded the answer and thus been timely filed." Carter v. City of Thibodaux Police Dept. ex rel. City of Thibodeaux, 2013 WL 5673570, at *2 (E.D. La. 2013) (citing Beary v. West Publ'g Co., 763 F.2d 66, 68 (2d Cir.1985); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1361, at 92 –93 & n.6 (3d ed.2004) (collecting cases)). Moreover, under Rule 12(h), the defense of failure to state a claim upon which relief can be granted, Rule 12(b)(6), is preserved from the waiver mechanism by the express terms of subdivision (h). Fed. R. Civ. Pro. 12(h). Here, Defendants filed their motion to dismiss simultaneously with their answer. (Doc. 5-1). Defendants' motion was not untimely.

content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiffs. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.

**B. Plaintiffs' redhibition and Magnuson-Moss Warranty Act claims are not prescribed.**

The MMWA does not supply a statute of limitations, and federal courts apply the limitations period of the analogous state law claim.  See Hardin v. Forest River, 2017 WL 3311260, at *2 (E.D. La. 2017); Naquin v. Berryland Campers, 2014 WL 6981944, at *3 (E.D. La. 2014).  Thus, the Court must look to Louisiana redhibition laws.  Id.

Under Louisiana law, a redhibition action against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery was made to the buyer.  La. Civ. Code Art. 2534(A)(1).  Regardless of whether the seller knew of the existence of the defect, a redhibition claim prescribes no later than one year from the day the defect was discovered by the buyer.  La. Civ. Code Art. 2534.  However, prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.  La. Civ. Code Art. 2534(C).

In Louisiana, "[t]he burden of proof is normally on the party pleading prescription; however, if on the face of the petition it appears that prescription has run . . . the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period."  Younger v. Marshall Indus., Inc., 618 So.2d 866, 869 (La. 1993); see also Bourque v. Olin Corp., 253 F.3d 701 (5th Cir. 2001); Eastin v. Entergy Corp., 865 So. 2d 49, 54 (La. 2004).

8

Defendants allege Plaintiffs' redhibition and MMWA claims are prescribed on the face of the Complaint.  (Doc. 5-1).  Defendants argue the actionable events in Plaintiffs' Complaint began on March 25, 2016, and Plaintiffs did not bring their claims until October 13, 2017.  (Doc. 5-1).  Defendants assert a one year prescription ran "from the date of purchase."  (Doc. 5-1).  Defendants further state the Plaintiffs' Complaint alleges the motor home exhibited defects from the date of purchase on March 25, 2016.  (Doc. 5-1).  Defendants argue the defects were known to Plaintiffs from the date of purchase.  (Doc. 5-1).  Defendants assert Plaintiffs' claims were filed almost 19 months from the date of purchase.  (Doc. 5-1).

Plaintiffs' Complaint alleges the motor home was defective at the time of purchase, the defects being discovered within the warranty periods.  (Doc. 1). Plaintiffs allege they began experiencing defective conditions within the first few months after purchase. (Doc. 1).  However, Plaintiffs do not allege a date such defects were discovered. (Doc. 1).  Thus, it is not clear from the face of the Complaint that Plaintiffs' claims were prescribed.

Nevertheless, Plaintiffs assert prescription was interrupted by repair attempts by Camping World.  (Doc. 9).  Plaintiffs have shown through their affidavit and exhibits that on at least seven occasions, repair attempts were made, beginning April 13, 2016.[5]  (Doc. 9).  Plaintiffs allege they last brought the motor home in for repair

---

[5] Plaintiffs' repair records show the dates the vehicle went in for repair and date completed or promised:  from April 13, 2016 to April 13, 2016; from May 30, 3016 to June 6, 2016; from July 12, 2016 to July 25, 2016; from February 22, 2017 to May 2, 2017; from March 21, 2017 to April 11, 2017; from July 3, 2017 to August 21, 2017; and from September 1, 2017 to September 20, 2017.  (Doc. 9-2).

on September 1, 2017, which was completed on September 20, 2017. (Doc. 9). Plaintiffs show not more than a year lapsed between any of the repair attempts. (Doc. 9). The Court finds prescription was interrupted and did not commence to run until September 20, 2017. See La. Civ. Code Art. 2534(C). Viewing the facts in the light most favorable to the Plaintiffs, Plaintiffs' redhibition and MMWA claims have not prescribed.

### C.   Warranty Coverage

Alternatively, Defendants argue Plaintiffs' MMWA claim should be dismissed because the defects alleged by Plaintiffs are not subject to any warranty. (Doc. 5-1). Defendants deny the motor home was defective. (Doc. 5). Defendants aver Forest River only warranted the motor home's "body structure." (Doc. 5-1). Defendants argue the defects do not constitute the "body structure." (Doc. 5-1). In support, Defendants attach Forest River's limited warranty (Doc. 5-3), and Camping World's purchase contract (Doc. 5-2).[6]

#### 1.   Forest River's Limited Warranty

Defendants admit Forest River offered a limited warranty for the motor home. (Doc. 5). The Forest River limited warranty provides coverage for a period of one year or 12,000 miles, whichever occurs first from the date of purchase (warranty period). (Doc. 5-3). The limited warranty guarantees that "the body structure of th[e]

---

[6] Plaintiffs' Complaint alleges express and implied warranties by Defendants. (Doc. 1). Plaintiffs do not object to the introduction of the warranty and purchase contract. (Doc. 9). The Court may consider a document attached to a motion to dismiss if it is referenced in a plaintiff's complaint, and central to the plaintiff's claim. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007); Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).

recreational vehicle shall be free of substantial defects in materials and workmanship attributable to Warrantor." (Doc. 5-3). The limited warranty expressly disclaims any warranty for damage "due to condensation, normal wear and tear or exposure to the elements." (Doc. 5-3). It also expressly disclaims any warranty "with regard to, but not limited to, the chassis including without limitation, any mechanical parts or systems of the chassis, axles, tires, tubes, batteries and gauges, optional generators, routine maintenance, equipment and appliances, or audio and/or video equipment." (Doc. 5-3).

The limited warranty also provides, in capital letters:

LIMITATION AND DISCLAIMER OF WARRANTIES: WARRANTOR EXPRESSLY LIMITS THE DURATION OF ALL EXPRESS AND IMPLIED WARRANTIES OF MERCHANTABILITY AND ALL IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE EXCEPT IN THOSE STATES THAT DO NOT ALLOW THIS EXCLUSION. WARRANTOR EXPRESSLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AFTER EXPIRATION OF THE WARRANTY PERIOD.

(Doc. 5-3). However, it recognizes that "[s]ome states do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply." (Doc. 5-3).

The limited warranty notes the warrantor's obligation to "remedy substantial defects in materials and workmanship caused by Warrantor" through "repair or replacement" within a "reasonable amount of time after appointment and delivery" at an authorized dealer and service center. (Doc. 5-3).

2.  **Camping World's Warranty Disclaimer (contained in the purchase contract).**

Defendants argue Camping World explicitly disclaimed all warranties, express or implied.  (Docs. 5-1, 5-2).  In support, Defendants attach the Camping World purchase contract. (Doc. 5-2).  The purchase contract states in bold that the "**front and reverse sides of this document constitute a binding purchase contract, not a warranty, between Buyer(s) and Dealer only**."[7] (Doc. 5-2). The purchase contract also states the "Buyer(s) understand and acknowledge that Dealer is a separate and distinct entity from, and not the principle or agent of any manufacturer(s) of the Unit . . . [and] that no manufacturer(s) can make any representation, agreement, inducement, or warranty which is binding upon or enforceable against Dealer."  (Doc. 5-2).

The purchase contract provides that the "Buyer(s) acknowledge this Agreement is fully complete and that Dealer provided ample opportunity to read this Agreement prior to affixing signatures hereto." (Doc. 5-2). The purchase contract includes terms, in bold and capital letters, that "**ALL VEHICLES ARE SOLD 'AS IS', WITH NO EXPRESS OR IMPLIED WARRANTIES FROM DEALER.**"  (Doc. 5-2). However, right below that statement, the contract provides that "[t]hird party extended service contract may be available at additional cost to buyer." (Doc. 5-2). The purchase contract also shows a "LTD-EXT WARRANTY" included in the purchase price for the amount of $8,749.00. (Doc. 5-2).

---

[7] The Court notes that Defendants' exhibit, without Defendants' explanation, included four attached pages, rather than a "front and reverse side."

The purchase contract states, in capital and bold letters, that "**BUYER AND DEALER CERTIFY THAT THE ADDITIONAL TERMS AND CONDITIONS PRINTED ON THE BACK OF THIS AGREEMENT, INCLUDING AN 'AS IS' CLAUSE, DISCLAIMERS OF ALL WARRANTIES AND LIMITATION AND DISCLAIMER OF DAMAGES CLAUSES, ARE AGREED TO AS PART OF THIS AGREEMENT, THE SAME AS IF PRINTED ABOVE THE SIGNATURE.**" (Doc. 5-2).

The signature page of the purchase contract states:

**Dealer Makes[sic] no guarantee or warranty, express or implied.** This vehicle is sold by Dealer 'AS IS' with no Dealer guarantee or warranty, implied or express. As to any manufacture(s) written warranty(s) applicable to this vehicle or its components, Dealer does not adopt or affirm it in any respect. **DEALER HEREBY DISCLAIMS AND EXCLUDES FROM THIS SALE ALL WARRANTIES, EXPRESS OR IMPLIED INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS. BUYER(S) ACKNOWLEDGE THIS DISCLAIMER IS MADE IN CAPITALIZED, BOLD AND UNDERLINED FONT AND IS "CONSPICUOUS."** Buyer(s) understand Dealer does not warrant the year of this Unit, the year of the chassis, or the year of its component parts, and that the manufacture(s) of the Unit, chassis, or component is solely responsible for the year assigned to this Unit to the extent its year is referenced in the Agreement.

(Doc. 5-2).

The Camping World purchase contract also contains the following terms:

9. **BUYER(S) INSPECTION AND ACCEPTANCE OF VEHICLE.** Buyer(s) understand that damage may have occurred to this Unit at the manufacturer(s) factory, during transport to Dealer, or while in Dealer's possession, on Dealer's premises, or at a show or other promotional event. Buyer(s) acknowledge that such damage to the Unit, if any, is typically corrected by the factory or repaired by the Dealer prior to delivery. Upon taking delivery of the Unit, Buyer(s) acknowledge: (i) having receiving ample opportunity for and actually inspecting the Unit as fully as

13

Buyer(s) desired; (ii) utilizing and relying solely upon Buyer(s)' own judgment in selecting, inspecting, and accepting this Unit at the time of delivery; (iii) accepting the Unit and determining in Buyer(s) sole discretion that the Unit is of adequate quality, merchantable, and otherwise fit for the purpose(s) intended by Buyer(s) for this Unit. Accordingly, Buyer(s) acknowledge that he/she/they did not rely on Dealer's skill or judgment at any time during the purchase or delivery of the Unit. Accordingly, Buyer(s) accept the Unit in its present condition on the date of delivery and acknowledge that Dealer has not made any representation regarding the Unit's condition, history, prior usage, quality or regularity of care or service, nor the existence of prior damage and/or repair of damage.

10. **DISCLAIMER OF WARRANTIES AND LIMITATION/EXCLUS-ION OF REMEDIES. DEALER MAKES NO GUARANTEE OR WARRANTY EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS AND EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE FROM THIS SALE TRANSCATION, AND SUCH WARRANTIES SHALL NOT APPLY TO THIS TRANSACTION OR THE DESCRIBED UNIT. BUYER(S) UNDERSTAND AND AGREE THAT DEALER MAKES NO WARRANTY ON THIS UNIT AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CONSTITUTE OR CREATE ANY DEALER WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED. BUYER(S) UNDERSTAND AND AGREE THAT ALL TERMS OF THIS AGREEMENT ARE BINDING AND SHALL APPLY IN ALL INSTANCES, EVEN IF BUYER(S) ELECT TO PURCHASE AN EXTENDED SERVICE CONTRACT. BUYER(S) UNDERSTAND AND AGREE THAT THE EXPRESS TERMS OF ANY MANUFACTURERS WRITTEN WARRANTY TO THE EXTENT ANY EXIST AND APPLY TO THE UNIT, CONTAIN AND CONSTITUTE BUYER(S) EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THE UNIT MIGHT CONTAIN.**

(Doc. 5-2).

### 3. Plaintiffs fail to state a claim for breach of express warranty against Forest River under the MMWA.

Citing 15 U.S.C. §§ 2302(a)(1) and (12), Defendants argue the MMWA allows

for the disclaimer of coverage of any component part warranted by the manufacturer

of that part. (Doc. 5-1). "The MMWA creates a statutory cause of action for consumers

14

'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [imposed by the Act] or [established by] a written warranty, implied warranty, or service contract.'" <u>Hardin</u>, 2017 WL 3311260, at *2 (quoting <u>Walton v. Rose Mobile Homes, L.L.C.</u>, 298 F.3d 470, 474 (5th Cir. 2002); 15 U.S.C. § 2310(d)(1). "[I]f the written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a 'limited warranty.'" 15 U.S.C. § 2303(a)(2).

The Act defines the term "written warranty" to mean:

**(A)** any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

**(B)** any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). Nothing in the Act prescribes the duration of written warranties given or requires that a consumer product or any of its components be warranted. <u>See</u> 15 U.S.C. § 2302(b)(2). The MMWA requires that any warranty issued that does not meet the Federal minimum standards for warranty shall be "conspicuously designate[d]" as a "limited warranty." 15 U.S.C. § 2303(a)(2). If the warranty issued limits the duration of the warranty coverage, charges for repairs made under the

warranty, or excludes or limits consequential or incidental damages, the warranty is considered "limited" under the MMWA. Id. at § 2304(a).

Defendants assert, therefore, there is a clear description of what is and is not covered under the manufacturer's limited warranty. (Doc. 5-1). Defendants assert these terms were fully and conspicuously disclosed in simple and readily understood language. (Doc. 5-1). The Forest River's warranty was conspicuously designated as a "limited warranty" in bold, capital letters. (Doc. 5-3). Warranty limitations are generally construed against manufacturers, and limitation attempts have often been ineffective. Datamatic, Inc. v. Int'l Bus. Machines Corp., 795 F.2d 458, 465 (5th Cir. 1986).

The defects complained of include: power jack leaks oil; entire motor home floor required regrouting; countertop had scratches that required buffing out; the large slide out never worked properly and broke the smoke detector; sewerage dump valves were broken and both sewer tanks shifted causing plumbing to shift and break apart; automatic shade broke on windshield, driver's side, and on top of sofa; scuffed leather sofa and foot print at purchase never came out; red and blue ink on the captain's chair; leaks found on the top of the large slide out; and new entry door locks. (Doc. 1). The alleged defects do not relate to the "body structure" of the motor home, and are expressly excluded by the limited warranty. (Doc. 5-3).

Here, the limited warranty provides coverage for a period of one (1) year or 12,000 miles, whichever occurs first, from the date of purchase, which in this case was March 23, 2016. Forest River's limited warranty unambiguously excludes

damages to the motor home based on defects of the "chassis including without limitation, any mechanical parts or systems of the chassis, axles, tires, tubes, batteries and gauges, optional generators, routine maintenance, equipment and appliances, or audio and/or video equipment". (Doc. 5-3). As required by the MMWA, the one-page warranty is conspicuously designated as a "limited warranty," and its terms are "fully and conspicuously disclosed[d] in simple and readily understood language" on the "face" of the warranty. <u>Lee v. Forest River, Inc.</u>, 2017 WL 4076028, at *2 (E.D. La. 2017) (citing 15 U.S.C. §§ 2302-03). Accordingly, the undersigned finds Plaintiffs' claim against Forest River for breach of express warranty under the MMWA should be dismissed for failure to state a claim for relief.

> **4.** <u>Defendants' motion to dismiss Plaintiffs' claim for breach of implied warranties under the MMWA and Louisiana redhibition laws should be denied.</u>

Under 15 U.S.C. § 2304, "notwithstanding section 2308(b) of this title, [warrantors] . . . may not impose any limitation on the duration of any implied warranty on the product." However, "[t]he Act also states 'implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.'" <u>Hardin</u>, 2017 WL 3311260, at *2 (quoting 15 U.S.C. § 2308). The MMWA prevents the supplier of a consumer product from avoiding an implied warranty if the supplier makes "any written warranty" or "enters into a service contract" with the consumer.[8] <u>See</u> 15 U.S.C. §

---

[8] "The term 'service contract' means a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."

2308(a). However, the MMWA does not preempt Louisiana law pertaining to the conscionability of contracts or warranty limitations. <u>Pitre v. Yamaha Motor Co., Ltd.</u>, 51 F.Supp.3d 644, 667-68 (E.D. La. 2014).

Federal courts apply analogous state law to breach of warranty claims under the MMWA. <u>See</u> <u>Hardin</u>, 2017 WL 3311260, at *2; <u>Naquin</u>, 2014 WL 6981944, at *3. Here, the Court must look to Louisiana redhibition laws. <u>Id.</u> Under Louisiana law, a buyer has a warranty "against redhibitory defects, or vices, in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code Art. 2520.

"The warranty against redhibitory defects covers only defects that exist at the time of delivery." La. Civ. Code Art. 2530. There is a presumption that the defect existed at delivery if it manifests within three days of delivery. <u>Id.</u> Such a defect may give a buyer the right to obtain rescission of the sale, or, if the buyer would have still bought the product but for a lesser price, a reduction of the purchase price. La. Civ. Code Art. 2520. Recovery under a theory of redhibition is limited to purely economic loss and not recovery for personal injury. <u>Jefferson v. Lead Indus. Ass'n, Inc.</u>, 106 F.3d 1245, 1251 (5th Cir. 1997). Additionally, a buyer may also recover damages and attorneys' fees from a seller deemed to be in "bad faith." La. Civ. Code Art. 2545.

---

15 U.S.C. § 2301(8). "The term 'implied warranty' means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7).

The implied warranty of redhibition may be excluded or limited by agreement, but it must be clear and unambiguous, contained in the sales documents, and brought to the attention of the buyer, or explained to, him. La. Civ. Code Art. 2548; Comment (c), La. Civ. Code Art. 2520 ("The warranty against redhibitory vices can be avoided only by an express and explicit waiver.") (citations omitted); see also Prince v. Paretti Pontiac Co., 281 So. 2d 112,117 (La. 1973); Rey v. Cuccia, 298 So.2d 840 (La. 1974). Louisiana courts generally strictly construe warranty limitations against manufacturers, except for "commercially sophisticated parties," in which the buyer is held to "a higher standard than the unknowledgeable customer." Datamatic, 795 F.2d at 465; Prince, 281 So.2d at 117; Boos v. Benson Jeep-Eagle Co., Inc., 717 So. 2d 661 (La. App. 4 Cir. 1998), writ den'd, 728 So. 2d 387 (La. 1998); Hollybrook Cottonseed Processing, LLC v. Carver, Inc., 2010 WL 1416781, at *9 (W.D. La. 2010) (citing La. Civ. Code Art. 2548).

The seller/manufacturer bears the burden of proving the warranty against redhibitory defects has been waived. Vega v. Autumnwood Homes, Inc., 2017 WL 636274, at *2 (E.D. La. 2017) (citing Tyson v. Brentley Merchand, 2015 WL 3548159, at *5 (La. App. 1 Cir. 6/5/15)).  However, an otherwise effective exclusion or limitation on the warranty against redhibitory defects is ineffective if the seller commits fraud, i.e. when the seller declared the thing has a quality he knew it did not have.  Id.; see also La. Civ. Code Art. 2548.

Additionally, a seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the

thing was delivered by the manufacturer to the seller. La. Civ. Code. Art. 2531. The manufacturer cannot eliminate this obligation by contract. Id.

Plaintiffs argue the MMWA prohibits a "supplier" from disclaiming implied warranties where a service contract is entered with the consumer. (Doc. 9). Plaintiffs cite 15 U.S.C. § 2308. Plaintiffs point to their sales contract with Camping World (Doc. 5-2), which shows a "LTD-EXT. WARRANTY," for which Plaintiffs were charged $8,749. (Doc. 9). Plaintiffs assert Forest River, which gave a written warranty, cannot benefit from any disclaimer in Camping World's contract. (Doc. 9). However, Defendants argue Section 2308 specifically allows warranties to be limited. Defendants assert the Court must look to Louisiana law to determine whether the implied warranty is enforceable. (Doc. 9).

In the alternative, Plaintiffs claim that even if it can be said they waived warranties against Camping World, Louisiana law entitles them to subrogation for Camping World's claims against Forest River. (Doc. 9). Plaintiffs further assert Louisiana law subrogates a buyer to the right in warranty of the seller against other persons, even when the warranty is excluded. La. Civ. Code Art. 2548. Plaintiffs also aver Defendants cannot show a valid waiver. (Doc. 9). Plaintiffs claim that the purchase contract (Doc. 5-2) does not state that the waiver was pointed out and explained to the buyer. (Doc. 9).

The existence of a redhibitory defect is a finding of fact. See Green v. Benson and Gold Chevrolet, 811 So. 2d 970, 975 (La. App. 5 Cir. 2002). Additionally, the Court relies on the Prince test, which requires the waiver be: (1) clear and

unambiguous; (2) contained in the sales documents; and (3) must be brought to the attention of the buyer.  <u>Prince</u>, 281 So. 2d at 112.  Defendants have not sufficiently shown that all three elements of the <u>Prince</u> test have been met. Specifically, it has not been shown that the waivers were brought to the attention of Plaintiffs.

Plaintiffs have alleged the implied warranty theories upon which their MMWA and redhibition claims against Forest River and Camping World are based.  Plaintiffs identify purported redhibitory defects that allegedly have yet to be repaired.  (Doc. 1).  Plaintiffs have pleaded enough facts in their petition to state a claim for relief under for breach of implied warranties under the MMWA and Louisiana redhibition laws.  At this stage in the litigation, the Court must accept as true Plaintiffs' well-pleaded facts.  At this time, dismissal of Plaintiffs' breach of implied warranty claims under the MMWA and redhibition claims against Forest River and Camping World, is unjustified.

### III.  <u>Conclusion</u>

For the foregoing reasons,

IT IS RECOMMENDED that the Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted (Doc. 5) filed by the Defendants Forest River and Camping World be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that (1) the motion should be granted as to Plaintiffs' claims for breach of express warranty against Forest River under the MMWA; and (2) the motion should be denied as to Plaintiffs' claims for breach of implied warranties under the MMWA and Louisiana redhibition laws.

IT IS FURTHER RECOMMENDED that Plaintiffs' claims for breach of express warranty against Forest River under the MMWA be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __16th__ day of May, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge